UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:

INNOVIDA HOLDINGS, LLC,                    Case No. 11-17702-RAM
et al.,                                    Case No. 11-17704-06-RAM
                                           Chapter 11
                    Debtors.               Jointly Administered
_____/

**CHAPTER 11 TRUSTEE'S EMERGENCY MOTION FOR ENTRY OF ORDER (I)
APPROVING TRANSFER AND SALE OF PATENT APPLICATIONS TO INNOVIDA
HOLDINGS, LLC; (II) AUTHORIZING TRUSTEE TO EXECUTE ASSET PURCHASE
AGREEMENT AND TO SELL ASSETS FREE AND CLEAR OF LIENS, CLAIMS, AND
ENCUMBRANCES; (III) APPROVING NOTICE PROVISIONS; (IV) APPROVING
COMPETITIVE BIDDING PROCEDURES; (V) SCHEDULING AN AUCTION; AND
(VI) SCHEDULING A HEARING TO APPROVE THE SELECTION OF THE HIGHEST
AND BEST OFFER AND CERTAIN RELATED RELIEF**

**Basis for Emergency Relief and Required Dates for Hearings**

**The Trustee must sell the hard assets identified in this Motion
on or before August 31, 2011, because such hard assets are
currently housed in a warehouse facility that is leased by
Innovida Holdings, LLC. Although the Trustee has agreed to
reject such lease on August 15, 2011, the landlord of the
warehouse facility has agreed to extend the rejection period
through August 31, 2011. In addition, the order approving
the sale of the assets identified herein has to be final and
nonappealable before closing. Therefore, fourteen days have
to elapse between the entry of the final sale order and the
closing. If approved, the Trustee requests that the Court set
the auction of the assets identified in this Motion for August 9,
10, or 11, 2011, and schedule a final sale hearing date no later
than August 12, 2011, so that a closing can occur on August 29,
2011.**

Mark S. Meland, in his capacity as Chapter 11 Trustee (***"Trustee"***) of InnoVida

Holdings, LLC (***"Holdings"***), InnoVida Services, Inc. (***"Services"***), InnoVida Southeast, LLC

(*"Southeast"*) and InnoVida MRD, LLC (*"MRD"*)(collectively, Holdings, Services, Southeast, and MRD shall be referred to as the *"Debtors"*), by and through undersigned counsel, moves this Court on an emergency basis and pursuant to 11 U.S.C. §§ 105, 363, and Fed. R. Bankr. P. 2002, 6004, 6006 and 9013, and Local Rules 2002-1(C)(2), 6004-1(A), 9013-1, and 9075-1, for entry of an Order (i) Approving the Transfer and Sale of Patent Applications to Innovida Holdings, LLC; (ii) Authorizing Trustee to Execute the Asset Purchase Agreement attached hereto, and to Sell Assets Free and Clear of Liens, Claims, and Encumbrances with Valid and Enforceable Encumbrances Attaching to the proceeds of the Sale; (iii) Approving Notice Provisions; (iv) Approving Competitive Bidding Procedures; (v) Scheduling an Auction; and, (vi) Scheduling a Hearing to Approve the Selection of the Highest and Best Offer and Certain Related Relief (the *"Motion"*), and states:

## I.     JURISDICTION AND BACKGROUND

1.     This Court has jurisdiction over this case pursuant to 28 U.S.C. §§ 157 and 1334. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. § 1408 and 1409.  The statutory basis for the relief sought herein are sections 105(a) and 363 of Chapter 11 of the Title 11 of the United States Bankruptcy Code.

2.     On March 4, 2011, the Trustee was appointed receiver of Holdings in a state court action styled *Chris Korge v. Claudio Osorio, Amarilis Osorio, Craig Toll and Innovida Holdings, LLC*, Case No.: 10-51885-CA-32 (*"State Court Action"*).   The state court later clarified its receivership order and provided that the Trustee was also appointed receiver for numerous affiliates and subsidiaries of Holdings, including Services, MRD, Southeast, Innovida Factories, Ltd. (*"Factories"*), and Innovida, Inc. (*"INN INC"*)(together, the *"Innovida*

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/3412/3412-1/00930158.DOC.}

*Entities"*).  Copies of the two orders in the State Court Action are attached as Exhibit "A" and "B", respectively.

3.       On March 24, 2011, Holdings, at the direction of the Trustee, filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida (the "Bankruptcy Court"), case no: 11-17702-BKC-RAM.

4.       On March 24, 2011, Services, at the direction of the Trustee, filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court, case no: 11-17705-BKC-RAM.

5.       On March 24, 2011, MRD, at the direction of the Trustee, filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court, case no: 11-17704-BKC-RAM.

6.       On March 24, 2011, Southeast, at the direction of the Trustee, filed a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court, case no: 11-17706-BKC-RAM.

7.       The Trustee did not file a Voluntary Petition for relief under Chapter 11 of the United States Bankruptcy Code in the Bankruptcy Court for Factories or INN INC.  However, the Trustee remains the receiver for Factories and INN INC in the State Court Action.

8.       On March 28, 2011, the Chapter 11 bankruptcy cases of Holdings, Services, MRD, and Southeast were jointly administered [ECF No. 23].

9.       On April 4, 2011, Mr. Meland was appointed Chapter 11 trustee for the Debtors [ECF No. 55].

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA  33131 • TELEPHONE (305) 358-6363
{Firm Clients/3412/3412-1/00930158.DOC.}

## II.   THE RECEIVER'S EFFORTS TO MAINTAIN THE OPERATIONS OF THE DEBTORS AND THE INNOVIDA ENTITIES

10.     Upon being appointed receiver on March 4, 2011, the Trustee (as Receiver at the time) began his investigation into the business of the Innovida Entities.  As is explained in the Receiver's First Interim (Initial) Report Including Application for Award of Fees and Expenses (the *"Receiver's Report"*), the Trustee (as Receiver at the time) quickly determined [after reviewing the financial records of the Innovida Entities and interviewing Claudio Osorio (*"Mr. Osorio"*)] that there was not enough available cash to sustain the business of the Innovida Entities and pay immediate expenses for more than a short period of time.  On March 24, 2011, the Receiver filed his Notice of filing Receiver's First Interim (Initial) Report. *See* ECF No. 7.

11.     Specifically, the Trustee (as Receiver at the time) immediately determined that in order to operate the business of the Innovida Entities, the expenses would include: (1) payroll (approximately $164,935 every 2 weeks); (2) warehouse rent (monthly rent of $16,794.72 with February and March unpaid); (3) Lincoln Road office rent (March rent is unpaid); and (4) Insurance premiums ($26,087.11).  The only known funds available to the Trustee (as Receiver at the time) upon being appointed Receiver was an aggregate of approximately $292,000 held at Wachovia Bank and $12,000 held at Royal Bank of Canada in Cayman (this account was frozen at the Receiver's directive).

12.     Given the clear inadequacy of cash to pay immediate expenses, on March 8, 2011, the Trustee (as Receiver at the time) convened a meeting at Innovida's Miami Beach office with his financial professionals and Mr. Osorio.  At the meeting, the Trustee (as Receiver at the time) specifically asked Mr. Osorio to identify all available, identifiable sources of funds to pay

ongoing operating expenses. Mr. Osorio indicated none existed. When asked how previous payrolls had been funded in the weeks leading up to the receivership, Mr. Osorio was unable to provide a cogent, intelligible response. Since then, Mr. Osorio was provided numerous other opportunities to provide more information on the businesses, but has generally not cooperated.

13.     For instance, on March 11, 2011, the Trustee (as Receiver at the time) took the deposition of Mr. Osorio and asked him again numerous times to identify funds that could be used to continue to operate the business of the Innovida Entities. Instead of providing accurate and direct answers or copies of all requested bank records for the Innovida Entities, Mr. Osorio responded to essentially every question that he did not know the location of funds or status of bank accounts, or asserted his Fifth Amendment privilege against self-incrimination.

14.     Indeed, outside of some recent documents produced by him in the instant case, Mr. Osorio has generally failed to adequately provide a host of information related to priority issues regarding the Innovida Entities. Despite numerous oral, written and emailed requests, the Trustee has yet to be provided complete information regarding sources of funds to pay business operations, as well as other data pertaining to the operations of the Debtors. In short, there has been a lack of adequate cooperation and availability of information and documentation.

15.     As a result of having limited funds to continue to operate the business of the Innovida Entities, coupled with the lack of cooperation from Mr. Osorio, the Trustee (as Receiver at the time) had no choice but to scale back the business operations of the Innovida Entities in order to have enough funds to preserve their going concern value for the benefit of the creditors. To this end, the Trustee (as Receiver at the time) identified and retained five Innovida employees in order to (i) preserve as long as possible manufacturing and operational memory;

and (ii) utilize their knowledge of the business operation to identify and analyze: the status of incomplete projects; assemble a proposed operating budget; assist in the completion of the initial inventory of assets; identify assets not owned by the company and organize their return to the proper vendor or service provider; and perform miscellaneous administrative duties; and assist in the sale of the assets of the companies. The retained employees included the Vice President of Operations, Vice President of Factory Operations, Logistics Specialist, Sales Specialist and Controller. These employees have since been terminated for lack of available operating funds. To be sure, Mr. Osorio has been aware of the lack of available cash to pay even the most basic expenses of the Debtors. Yet, Mr. Osorio has not provided any cash or information about available cash to the Trustee to maintain even the most basic expenses. In addition, Mr. Osorio has done nothing material to aid the Trustee in furtherance of his duties as Trustee for the Debtors, but instead, has hindered the Trustee's efforts.

## III.    THE TRUSTEE'S EFFORTS TO SELL THE BUSINESS OF THE DEBTORS AND RELATED ASSETS

16.    After being appointed Receiver for the Innovida Entities, and as discussed in the Receiver's First Interim Report and Second Interim Report, and recognizing there was insufficient funds to maintain the business operations of the Innovida Entities, the Trustee (as Receiver at the time) began to market for sale the Innovida Entities as a going concern, as well as the assets of the Innovida Entities. The Trustee spoke and met with creditors, investors, and vendors of the Innovida Entities. In addition, and because the instant case is a fairly high-profile case, the Trustee was approached by numerous third parties interested in purchasing the Innovida Entities as a going-concern and for the hard assets.

17.     After numerous meetings and discussions with interested purchasers, it became clear to the Trustee that the parent company of Milport Associates, S.A. (*"Milport"*) was the company with the financial wherewithal and most commitment to purchase the Debtors' and Innovida Entities' assets.  Milport was the only interested party that the Receiver met with that put professional resources into pursuing the acquisition of the Debtors and the Innovida Entities' assets.

18.     As will be detailed below, the Trustee has determined that the sale of the aforementioned assets of Holdings, Services, MRD, and Southeast (as well as Factories and INN INC) is in the best interests of the Debtors' bankruptcy estate (the *"Estate"*) and the creditors.

## IV.    APPROVAL TO TRANSFER/SELL THE PATENT APPLICATIONS FROM FACTORIES AND INN INC TO HOLDINGS

19.     Factories is a Cayman Islands corporation that is in receivership in the State Court Action.   Factories is the owner of twenty-eight (28) patent applications (the *"Factories Patents"*), a majority of which were abandoned by Mr. Osorio and are expired.

20.     INN INC is a Delaware corporation that is also in receivership in the State Court Action.  INN INC owns one published patent application (the *"INN INC Patent"*) (collectively, the Factories Patents and the INN INC Patent shall be referred to as the *"Patent Applications"*).

21.     The Trustee has valued the Patent Applications at $20,000.

22.     As a contingency to the APA (as defined below), Milport has requested that the Patent Applications be transferred to Holdings (the *"Patent Applications Transfer"*).  In order to do so, the Trustee (as receiver for Factories and INN INC) has filed a motion (the *"Transfer Motion"*) in the State Court Action requesting the entry of an order allowing for the Patent

Applications Transfer. Pursuant to the Transfer Motion, once the Patent Applications are sold by Holdings via the APA (as defined below); Holdings will transfer $20,000 from the closing proceeds to the Receiver (ie. the Trustee) for Factories and INN INC. A copy of the Transfer Motion is attached as Exhibit "C."

23.     The APA (as defined below) is contingent on this Court approving the Patent Applications Transfer.

24.     In addition, counsel for the Overseas Private Investment Corporation (*"OPIC"*) has advised the Trustee that it OPIC may have a lien on the sale proceeds of the Patent Applications.

## V.     THE ASSET PURCHASE AGREEMENT

25.     On July 22, 2011, the Trustee and Millport entered into an asset purchase agreement (the "APA"). A copy of the APA is attached as Exhibit "D" to this Motion.

26.     The APA provides that Millport will serve as the stalking horse bidder, in the amount of $500,000 (th e *"Purchase Price"*), for the purchase of the following assets (the "Assets"): all the personal property of Southeast (which includes furniture, inventory, and equipment, but excluding any artwork); all the personal property of Services (excluding artwork); all the tangible and intangible assets of Holdings and MRD; all the Patent Applications of Holdings (see Section IV above); and, an option exercisable anytime upon written notice within 12 months of the Closing Date (as defined in the APA), to acquire without additional consideration any other assets or interests owned or controlled by any of the Debtors or their affiliates and subsidiaries. For a complete list of the Assets being sold, please see sections 1.1 and 1.4 of the APA, as well as Exhibits "A - D" of the APA.

27.    As will be discussed below, the Southeast Assets allegedly serve as collateral for the claim of CCH Housing, LLC. As a result, the portion of the $500,000.00 Purchase Price attributed to the Southeast Assets ($136,382.00) will be set aside pending the approval of a resolution reached between the Trustee and CCH Housing, LLC.

28.    The APA contemplates that Millport's offer will be subject to higher and better offers as described therein, and that competitive bidding will be conducted at an auction with an initial overbid requirement of $70,000.00 of the Purchase Price (ie. $570,000.00), with bidding increments thereafter of $20,000.00 or to be determined by the Trustee at the auction of the Assets (collectively the "Notice of Bidding Procedures"). The Notice of Bidding Procedures are attached as Exhibit "E" to this Motion.

29.    Moreover, Section 9.2.1(d) of the APA provides for the payment of a break-up fee (the *"Break-Up Fee"*) in the amount of $60,000.00 (to be paid from the sale proceeds ten days after the closing on the sale of the Debtors' Assets) if Millport is not the successful bidder at the auction.

30.    To the extent that any secured creditors of Holdings, Southeast, or Services possess and perfected liens upon any of the Assets to be sold, such liens will attach to the proceeds of the sale, pursuant to 11 U.S.C. §363.

31.    The APA is contingent on the approval of the Patent Applications Transfer in the State Court Action and by this Court.

## VI.    LIENS AGAINST THE ASSETS

32.    CCH Housing, LLC (*"CCH"*), asserts a first priority security interest in the Southeast Assets by virtue of an alleged Security Agreement entered into between Holdings,

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/3412/3412-1/00930158.DOC.}

Southeast, and CCH (the *"Security Agreement"*). In furtherance of its Security Agreement and to perfect its alleged secured interest in the Southeast Assets, CCH recorded a UCC-1 Financing Statement with the Florida Secured Transaction Registry on April 8, 2009, filing number 200900323785.

33.    The Trustee has entered into an agreement with CCH wherein CCH would consent to the APA and the sale of the Southeast Assets, which agreement is subject to Bankruptcy Court approval. Specifically, CCH has agreed to the valuation of $136,382 for the Southeast Assets. From this amount, the Trustee needs to pay the Miami-Dade County Tax Collector $11,422.74 (as is further detailed below). From the resulting balance of $124,959.26, CCH has agreed to a 10% surcharge for the benefit of the Estate. To the extent there are higher and better bids generated at the auction and the value for the Southeast Assets increases above $136,382, then CCH has agreed that the Trustee shall have an additional 25% surcharge from such overage amount.

34.    Upon information and belief, the Trustee believes that Chris Korge (*"Mr. Korge"*), the plaintiff in the State Court Action, asserts a secured interest in Holdings' Assets by virtue of a final default judgment obtained by Mr. Korge on March 3, 2011 (the *"Judgment"*), in the amount of $4,012,500, which Judgment was recorded with the Florida Department of State on March 4, 2011 (thereby creating a judgment lien), document number J11000132782.

35.    The Trustee contests that Mr. Korge's Judgment against Holdings is secured due to the fact that the Judgment was recorded with the Florida Department of State (thereby creating a judgment lien) within ninety (90) days of Holdings' petition date. Specifically, the Trustee believes that Mr. Korge's Judgment is avoidable pursuant to 11 U.S.C. § 547.

36.     Upon information and belief, the Trustee believes that OfficeMax Incorporated (*"OfficeMax"*) asserts a secured interest in the Holdings' Assets by virtue of a final judgment obtained by OfficeMax on February 23, 2011 (the *"OfficeMax Judgment"*), in the amount of $2,073.83, which OfficeMax Judgment was recorded with the Florida Department of State on March 8, 2011 (thereby creating a judgment lien), document number J11000135975.

37.     The Trustee contests that the OfficeMax Judgment against Holdings is secured due to the fact that the OfficeMax Judgment was recorded with the Florida Department of State (thereby creating a judgment lien) within ninety (90) days of Holdings' petition date. Specifically, the Trustee believes that the OfficeMax Judgment is avoidable pursuant to 11 U.S.C. § 547.

38.     The Miami-Dade County Tax Collector (the *"Tax Collector"*) asserts that it has a secured claim against the personal property of Southeast in the amount of $157,120.19 for unpaid personal property taxes for 2009 – 2011. *See* ECF Claim No. 12-1. The Tax Collector agrees that the personal property taxes due on Southeast's personal property that is being sold is $11,422.74. The Trustee, with agreement from CCH, will pay the $11,422.74 from the sale proceeds generated from the Southeast Assets. Therefore, the Tax Collector will not object to such sale.

39.     Unless otherwise provided by order of the Court, the Trustee reserves the right to object to (a) the validity, priority, and extent of any security interests asserted by any entity on the Assets, and (b) the alleged amount due and owing to such entities.

## VII.    THE SALE SHOULD BE APPROVED

40.    Section 363(b) provides in relevant part that a trustee "after notice and a hearing, may use, sell or lease, other than in the ordinary course of business, property of the estate." Sales of this nature are generally approved when the Trustee demonstrates that the sale constitutes an exercise of sound "business judgment." *See In re Condere Corp.*, 228 B.R. 615 (Bankr. S.D. Miss. 1998); *see also WBQ P'Ship v. Virginia*, 189 B.R. 97 (Bankr. E.D. Va. 1995).

41.    The Trustee believes that each of the business judgment standards has been, or shall be, satisfied upon the completion of the sale of the Assets. First, the Trustee will (and already has) extensively market the Assets for sale via advertisements in certain publications and will communicate the sale of the Assets (and the Debtors' business operations) to numerous companies and individuals, including joint venture partners and investors in the Debtors' business. Second, the Debtors' estates are out of funds, and as a result, insurance coverage on the Assets will expire on August 8, 2011 (the date the applicable insurances will be canceled due to non-payment).[1] Third, the Southeast and Services Assets are currently housed at Holdings' warehouse facility (the *"Warehouse"*), which is leased (the *"Lease"*) from the Martin Weiss and Margaret Weiss Partnership (the *"Landlord"*). The Landlord is already owed two months of post-petition rent (for June and July 2011), and such post-petition rent will continue to accrue on a monthly basis (as well as utilities) until the hard Assets are removed from the Warehouse and the Lease is rejected (which rejection is scheduled to occur on August 15, 2011, but has been extended to August 31, 2011 subject to Court approval). Fourth, the Trustee has provided

---

[1] The Trustee is in the process of securing funds that can be used to pay the August insurance premium. However, the insurance policy is set to expire on September 7, 2011, and will not be renewed.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/3412/3412-1/00930158.DOC.}

adequate and reasonable notice of the proposed sale to all interested parties as provided by Bankruptcy Rules 2002 and 6004 and Local Rules 2002-1(K) and 6004-1(A). Fifth, by establishing the noticed sale wherein competing bids may be issued, the Trustee believes that the highest and best price will be achieved for the Assets. And finally, the sale is being proposed in good faith by the Trustee. *See In re After Six, Inc.*, 154 B.R. 876, 883 (Bankr. E.D. Pa. 1993); *see also In re Abbots Diaries of Pennsylvania, Inc.*, 788 F. 2d 143, 149 (3d Cir. 1986).

42.    The Trustee proposes to sell the Assets free and clear of all liens, claims, and encumbrances pursuant to Section 363(f) of the Bankruptcy Code with all such liens, claims, and encumbrances attaching to the sale proceeds. Such a sale is permitted if and when one of the following conditions is met: (1) applicable non-bankruptcy law permits sale of such property free and clear of such a lien, claim, or encumbrance; (2) the entity holding such lien, claim, or encumbrance consents to such a sale; (3) the lien, claim, or encumbrance is less than the aggregate value of all such interests; (4) such interest is a bone fide dispute; or (5) the entity is compelled in a legal or equitable proceeding to accept a money satisfaction of such interest. *See generally* 3 Collier on Bankruptcy ¶ 363.06 (15th Ed. 2003). The language of Section 363(f) is disjunctive so that a sale free and clear of liens, claims, and encumbrances may be approved if any of the aforementioned conditions are met. *Id.*; *see also In re Heine*, 141 B.R. 189 (Bankr. D.S.D. 1992).

43.    In the instant case, the alleged secured claim of CCH will not be satisfied by the sale of the Southeast Assets. CCH's claim is in excess of $3,800,000, but the Southeast Assets (which serve as collateral for CCH's alleged secured claim) are valued and are being sold for $136,382.00.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/3412/3412-1/00930158.DOC.}

44.     Accordingly, the Trustee proposes to sell the Southeast Assets and the Holdings Assets to the highest and best qualified bidder pursuant to Section 363(f)(2) and (4), which provide:

> (f)     The Trustee may sell property under subsection (b) or (c) of this section free and clear of any interest in such property of an entity other than the estate, only if –
>
> (2)     such entity consents;
>
> (4)     such interest is a bona fide dispute;

45.     Pursuant to Section 363(f)(4), a "bona fide dispute exists when there is an objective basis for either factual or legal dispute as to the validity of an interest in property." *See In re Robotics Vision System, Inc.*, 322 B.R. 502, 506 (Bankr. D.N.H. 2005). In deciding whether a bona-fide dispute exists, the court does not need to determine the outcome of such dispute, but only whether one exists. *Id.* In addition, the purpose of Section 363(f)(4) is to permit a bankruptcy estate to sell property "free and clear of interests that are disputed by the representative of the estate so that liquidation of the estate's assets need not be delayed while such disputes are being litigated." *See In re Clark*, 266 B.R. 163, 171 (9th Cir. BAP 2001); *see also In re Oneida Lake Development, Inc.*, 114 B.R. 352, 357 (Bankr. N.D.N.Y. 1990)(allegations are sufficient to raise a bona fide dispute over the avoidability of a lien where a sale needed to be concluded before an evidentiary hearing could take place).

46.     As discussed in paragraph 33 *supra*, CCH consents to the APA.

47.     Mr. Korge's Judgment and the OfficeMax Judgment against Holdings are subject to a bona fide dispute because each was converted to a lien within the 90-day preference period from the date Holdings filed a Chapter 11 petition. *See Deel Rent-A-Car, Inc. v. Levine*, 16 B.R.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/3412/3412-1/00930158.DOC.}

873, 875 (Bankr. S.D.Fla. 1982). Absent an agreement from Mr. Korge and OfficeMax that their respective judgment are not secured, the Trustee will bring an adversary proceeding against each of them for receipt of a preferential transfer pursuant to Section 547.

## VIII.    RELIEF REQUESTED

48.     The Trustee respectfully requests entry of an order approving the sale of the Assets according to the terms described herein.

49.     Specifically, the Trustee seeks an order pursuant to §§ 105 and 363 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006 and 9013: (i) approving the transfer and sale of the Patent Applications to Holdings; (ii) approving the stalking horse APA with Millport; (iii) approving notice provisions; (iv) approving the Notice of Bidding Procedures in the form attached as Exhibit "E;" (v) setting an auction date; and (vi) scheduling a final hearing to approve the selection of the highest and best bidder free and clear of all liens, claims, and encumbrances from the auction sale of the Assets. The Trustee believes that execution of the APA and approval of the Notice of Bidding Procedures and the sale to the bidder providing the highest and best offer is in the best interests of the Debtors, the estate and the creditors.

50.     The Bidding Procedures are designed to maximize the value of the Debtors' assets for the estate, which is the appropriate goal of any such procedure. *In re Integrated Resources, Inc.*, 147 B.R. 650 (S.D.N.Y. 1992).

51.     The Break Up Fee is designed to lock in the minimum bid price of $500,000 and to compensate Milton for costs it will incur in connection with the APA should Milton fail to be the winning bidder at auction. A break up fee is appropriate both to attract additional, serious

bids and to ensure that the original bidder does not retract its bid. *Id.*; *In re APP Plus, Inc.*, 223 B.R. 870 (Bkrtcy. E.D.N.Y.); *In re S.N.A. Nut Company*, 186 B.R. 98 (Bkrtcy. N.D. Ill. 1995).

## IX.    NOTICE OF MOTION

52.    The Trustee's undersigned counsel shall provide notice of this Motion via electronic mail to (a) Millport; (b) the U.S. Trustee; (c) counsel to the Unsecured Creditors' Committee; (d) counsel for the Internal Revenue Service; (e) all persons and entities that have expressed an interest in the purchase of the Debtors' assets; and, (f) all other parties who have filed a notice of appearance, consistent with Bankruptcy Rules 2002(a)(2) and 6004 and Local Rules 2002-1(K) and 6004-1(A).  In addition, the Trustee will publicize the auction in the Daily Business Review and/or Miami Herald.

31.    The Trustee submits that such notice constitutes good faith and sufficient notice of the Motion and that no further notice is needed.

**WHEREFORE**, the Trustee respectfully requests this Court enter an order:

1.    Approving the Patent Applications Transfer;

2.    authorizing the Trustee to execute the Asset Purchase Agreement;

3.    approving the Break Up Fee;

4.    approving the Notice of Bidding Procedures;

5.    Setting an auction date; and

6.    scheduling a final hearing to approve the selection of the highest and best bidder free and clear of all liens, claims, and encumbrances from the auction sale of the Assets.

LAW OFFICES OF MELAND RUSSIN & BUDWICK, P.A.
3000 SOUTHEAST FINANCIAL CENTER, 200 SOUTH BISCAYNE BOULEVARD, MIAMI, FLORIDA 33131 • TELEPHONE (305) 358-6363
{Firm Clients/3412/3412-1/00930158.DOC.}

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served on July 25, 2011, via the Court's Notice of Electronic Filing upon the Registered Users listed on the attached Exhibit "1"; via electronic mail upon the parties listed on the attached Exhibit "2"; and via U.S. Regular Mail upon those parties on the attached Exhibit "3".

 s/ Peter D. Russin
Peter D. Russin, Esquire
Florida Bar No. 765902
prussin@melandrussin.com
Daniel N. Gonzalez, Esquire
Florida Bar No. 0592749
dgonzalez@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3000 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221

*Attorneys for Chapter 11 Trustee, Meland*

## SERVICE LIST

**Electronic Mail Notice List**
The following is the list of parties who are currently on the list to receive e-mail notice/service for this case.

Geoffrey S. Aaronson    gaaronson@aspalaw.com,
tdmckeown@mckeownpa.com;sbeiley@aspalaw.com
Adrian J Alvarez    aalvarez@lorenlawfirm.com
Steven L Beiley    sbeiley@aspalaw.com
Michael S Budwick    mbudwick@melandrussin.com,
ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
Jonathan S. Feldman    jfeldman@melandrussin.com,
ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
Daniel N Gonzalez    dgonzalez@melandrussin.com,
ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
Jordi Guso    jguso@bergersingerman.com,
efile@bergersingerman.com;fsellers@bergersingerman.com
Andrew R Herron    aherron@hjo-law.com, ndecastro@hjo-law.com
Robert C Meyer    meyerrobertc@cs.com, taniaslaw@yahoo.com;rcmeyer@gmail.com
Miami-Dade County Tax Collector (Windley)    mdtcbkc@miamidade.gov
David A Nunez    david@nunez-law.com
Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
Paul L. Orshan    plorshan@orshanpa.com, maria@orshanpa.com
John J Quick    jquick@rccl.com, jbaez@rccl.com;JCSLopez@rccl.com
Patricia A Redmond    predmond@stearnsweaver.com,
jrivera@stearnsweaver.com;rross@stearnsweaver.com;mmesones-mori@stearnsweaver.com;dill
worthcdp@ecf.epiqsystems.com
Peter D. Russin    prussin@melandrussin.com,
ltannenbaum@melandrussin.com;mrbnefs@yahoo.com
Luis Salazar    luis.salazar@izhmlaw.com,
karina.dominguez@izhmlaw.com;linda.jackson@izhmlaw.com;kevin.cabrera@izhmlaw.com;vita
lia.mera@izhmlaw.com
Steven D Schneiderman    Steven.D.Schneiderman@usdoj.gov
Matthew H Scott    mhs@trippscott.com, bankruptcy@trippscott.com
Eric J Silver    esilver@stearnsweaver.com,
mmesones-mori@stearnsweaver.com;rross@stearnsweaver.com;larrazola@stearnsweaver.com
Melinda S Thornton    cao.bkc@miamidade.gov
Scott A. Underwood    scott.underwood@fowlerwhite.com, sstorno@fowlerwhite.com

**EXHIBIT 1**

**SERVICE LIST**
**In re: Innovida Holdings, LLC, et al.**
**Case No.: 11-17702-RAM**

*Service via Electronic Mail:*

Randall Liew
Randall.Liew@trade.gov

Don Traczyk
dontraczyk@gmail.com

Ron Benzeev
ronb@worldhousingsolution.com

James Solano
allenvte@gmail.com

Mike Suarez
Mike@GraphiteCap.com

David Weiss
Dweiss@hgpauction.com

Leland H. Nolan
leland.nolan@gmail.com

Alton Herndon
alton.herndon@bertram.com

Chris Yerkes
cyerkes@cxybi.com

Dave Grange
dgrange@ospreyglobalsolutions.com

Rick Vandiver
rvandiver@ospreyglobalsolutions.com

Kurt Bendler
Kurt.bendler@altusgroup.com

Mrs. XP Doctor
drxping@yahoo.com.hk

Exhibit 2

Andrew Chen
goldenh18@hotmail.com

Tom Sullivan
ts2@lumberliquidators.com

Kurt Bendler
Kurt.bendler@altusgroup.com

Brian Holland
brian@biditup.com

Keith A. Simpson, Jr.
keith@simpsonconstructors.com

Wilfred Maignan
wilfridmaignan@aol.com

Kasra Hedayatnia
khedayatnia@higcapital.com

Whitney George
wcg@generalcapitalpartners.com

J. Gregory Barrow
jgb@generalcapitalpartners.com

Philip Spencer
pspencer56@gmail.com

Harish Kathuria
harharish@yahoo.com

Machour Moukkadean
mmoukaddem@mac.com

Overseas Private Investment Corp.
Berger Singerman, P.A.
c/o Jordi Guso, Esq.
200 S. Biscayne Blvd., Suite 1000
Miami, FL 33131

Core Development Holdings Corp.
c/o Abbey L. Kaplan, Esq.
Kluger, Kaplan, et al.
201 S. Biscayne Blvd, 17 FL
Miami, FL 33131

Advanced Messengers
2980 W 84 St
Ste 6
Hialeah, FL 33018

Akerman Senterfitt
POB 4906
Orlando, FL 32802

Allied Environmental
Attn: Steven Coker, Sr., VP
4465 E Genesee St, Ste 128
Dewitt, NY 13214

Amarilis Osorio
15 Star Island Dr
Miami Beach, FL 33139

American Building Materials
1250 S Powerline Rd
Deerfield Beach, FL 33442

Bared & Associates, P.A.
2950 SW 27 Ave, Ste 100
Miami, FL 33133

Bernie Carballo
129 Commodore Dr
Jupiter, FL 33477

CCH Housing, LLC
c/o Steven R. Tanenbaum, Esq.
Solomon & Tanenbaum, P.C.
707 Westerchester Ave, Ste 205
White Plains, NY 10604

Carballo Ventures, Ltd.
129 Commodore Drive
Jupiter, FL 33477

Carlos Boozer
c/o David A. Nunez, Esq.
Meyer & Nunez, P.A.
150 W. Flagler St., Suite 2700
Miami, FL 33130

Chris Korge
230 Palermo Ave
Coral Gables, FL 33134

Christopher G. Korge
c/o Benjamin H. Brodsky, Esquire
Coffey Burlington
2699 S. Bayshore Dr, Penthouse
Miami, FL 33133

Cindy Boozer
c/o David A. Nunez, Esq.
Meyer & Nunez, P.A.
150 W. Flagler St., Suite 2700
Miami, FL 33130

Clamo, Inc.
15 Star Island Dr
Miami Beach, FL 33139

Claudio Osorio
15 Star Island
Miami Beach, FL 33139

Cooperative Housing Foundation
Attn: David A. Weiss, Pres and CEO
8601 Georgia Ave, Ste 800
Silver Springs, MD 20910

Core Development Holdings Corp.
1080 NW 163 Dr
Miami, FL 33169

Cruden Hospital
c/o Simpson Construction, Inc.
10450 SW 187 St
Miami, FL 33157

DRC Emergency Services, LLC
Attn: Robert Isakson
740 Museum Dr
Mobile, AL 36608

Deltana Enterprises, Inc.
10820 NW 29 St
Miami, FL 33172

Harlan W. Waksal
c/o 7 North Willow Street, Suite 6
Montclair, NJ 07042

Harlan Waksal
Waksal Consulting LLC
7 N Willow St, Ste 6
Montclair, NJ 07042

Hellmann Worldwide Logistics, Inc.
10450 NW 41 St, Ste 100
Miami, FL 33178

Mytre Investments, LLLP
3109 Grand Avenue
PMB 447
Miami, FL 33133

NIM, LLC
15 Star Island Dr
Miami Beach, FL 33139

Officemax Incorporated
263 Shuman Blvd.
Naperville, IL 60563

Overseas Private Investment
Corporation
Attn: Financial Management
1100 New York Ave
Washington, DC 20527

John J. Quick, Esq.
Royal Carribean Curises Ltd.
1050 Carribean Way
Miami, FL 33132

Exhibit 3

Ryan Freedman
400 Broome St
11 FL
New York, NY 10013

Ryan Freedman
c/o Steven R. Tanenbaum, Esq.
Solomon & Tanenbaum, P.C.
707 Westerchester Ave, Ste 205
White Plains, NY 10604

Serenity Holdings, Limited
105 W. Main Street
Cartersville, GA 30120

Shutts & Bowen, LLP
201 S. Biscayne Blvd., Ste 1500
Miami, FL 33131

The E Group Inc.
72 Pleasant Ridge Road
Harrison, NY 10528

Timberline International, Inc.
Attn: Rhonda Dawkins
PO Box 1225
Brewton, AL 36427

Wholesale Building Products
3050 N 29 Ct
Hollywood, FL 33020

Zarco Einhorn Salkowski & Brito, PA
Bank of America Tower
100 SE 2 St, Ste 2700
Miami, FL 33131

Geoffrey S. Aaronson, Esq.
Steven L. Beiley, Esq.
Aaronson Schantz, P.A.
100 SE 2nd St, 27th Floor
Miami, FL 33131

Priscilla Windley
Paralegal Collection Specialist
Miami Dade Bankruptcy Unit
140 West Flagler St., Suite 1403
Miami, FL 33130

Craig Toll
1224 NW 140 Terr
Pembroke Pines, FL 33028

Adrian J. Alvarez, Esq.
Bruce E. Loren & Associates
2000 Palm Beach Lakes Blvd.
Suite 501
West Palm Beach, FL 33409

Andrew R. Herron, Esq.
Alaina B. Siminovsky, Esq.
Herron Jacobs Ortiz
1401 Brickell Ave., Suite 840
Miami, FL 33131

David Nunez, Esq.
Meyer & Nunez, Esq.
2223 Coral Way
Miami, FL 33145

Elliott Company of Indianapolis Inc.
9200 Zionsville Rd
Indianapolis, IN 46268

Gail Sandler Reiss
c/o Mark E. Pollack, Esq.
800 Douglas Rd, Ste 450
North Tower
Coral Gables, FL 33134

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Sherry Coltune
c/o Mark E. Pollack, Esq.
800 Douglas Rd, Ste 450
North Tower
Coral Gables, FL 33134

Simpson Construction, Inc.
10450 SW 187 St
Miami, FL 33157

Euler Hermes UMA
600 S 7 St
Louisville, KY 40201-1672

Goldman, Evans & Trammell LLC
10323 Cross Creek Blvd F
Tampa, FL 33647

Melinda S. Thornton
2810 Stephen P. Clark Center
111 N.W. First Street
Miami, FL 33128

Paul L. Orshan, Esq.
2506 Ponce De Leon Blvd.
Coral Gables, FL 33134

VT Inc. as Trustee of World Omni
LT c/o Matthew Scott, Esq.
Trip Scott, PA
110 SE 6t Street, 15th Floor
Ft. Lauderdale, FL 33301

Luis Salazar, Esq.
Linda Jackson, Esq.
Infante Zumpano
500 S. Dixie Highway, Suite 302
Miami, FL 33146

Scott A. Underwood, Esq.
Fowler White Boggs PA
P.O. 1438
Tampa, FL 33601

Arkel-Sallyport Global Sudan
Ste 501, St. James Court
St. Denis Street
Port Louis
REPUBLIC OF MAURITIUS

College Charite de St. Louis
#360 Ave John Brown
Bourdon, Port Au Prince
HAITI

Importadoras Ebo, C.A.
Madrices A Marron, No. 22
Pza. Catedral, Municipio Liberatador
Dtto, Capital Caracas
VENEZUELA

World Vision Intl Haiti Branch
Attn: Emmanuel Isch
#49 Rue Chavanne
Complexe J'imagine Petion Ville
Port-Au-Prince, HAITI

Xinyong Nei
c/o Tripod Capital
Ste A 1704, No. 1518
Minsheng Rd.
Shanghai, P.R.C.

Laboratoire National De Sante Publique
Attn: Mr. Don Traczyk
Delmas 33, A Cote Hospital La Paix
Port-Au-Prince
HAITI

Paul Emile Noel
Cadman Plaza Station
P.O. Box 925
Brooklyn, NY 11202-0923

Roy Duenas
NF Business Brokers, Inc.
4424 NW 13th Street, Suite C-11
Gainesville, FL 32609

Kurt Bendler
North America Cost Consulting
& Project Management
330 Royal Hawaiian Ave
Hawaii
Kasra Hedayatnia
H.I.G. Capital LLC
Bayside Capital
1450 Brickell Avenue, 31st Floor
Miami, FL 33131

Innepar
Atilano de Oms Sobrinho, President
Rod. SC 401 No. 600- Modulo 05
88030-907 Florianopolis
BRAZIL

Martin Serrano
Importadoras Ebo, C.A.
Madrices A Marron, No 22
Pza. Catedral Municipio Liberatador
Caracas, VENEZUELA

Norm Alston
11066 Seaport Lane
Boca Raton, Florida, 33428

Mike Suarez
Graphite Capital, LLC
141 NE 3rd Ave, Suite 902
Miami, FL 33132

Brian Holland
BIDITUP
13105 N.W. 42nd Ave.
Opa-Locka, FL 33054

Whitney George
General Capital Partners
370 17th Street, Suite 5660
Denver, CO 80202

Kenneth Hardcastle
Arkel-Sallyport Global Sudan
Ste 501, St James Ct, St Denis St
Port Louis
REPUBLIC OF MARITIOUS

Bruno Mourral
Prince Hotel, Ste 21
Angel Rue 3 Et Ave. N
Port-Au-Prince
HAITI

Frederic S. Newman, Esq.
Hoguet Newman Regal, et al
10 East 40th Street
New York, New York 10016-0301

Leland H. Nolan
90 Prince Street
New York, New York 10012

Keith A. Simpson, Jr.
Simpson Construction Incorporated
10450 SW 187 Street
Miami, FL 33157

J. Gregory Barrow
General Capital Partners
370 17th Street, Suite 5660
Denver, CO 80202